OPINION OF THE COURT
Philip J. Chetta, J.
This is a motion by a surety in a criminal case to vacate a forfeiture of bail.
An interesting question is presented in this case: Does a stay of execution extend the one-year time period for recovery of bail? The People take the negative position, relying on a century-old case. Surety challenges this view and characterizes the case as a ghost of the past which should now be laid to rest.
The facts are as follows: Defendant, Henry Brown, was indicted in Queens, charged with robbery. His mother-in-law, in the interest of marital harmony, advanced the sum of $1,000 for bail. On June 24, 1977, Brown failed to appear in court and the minutes indicated that "the defendant having neglected to appear for trial, bail is ordered forfeited and a *128 bench warrant order issued. Execution of said forfeiture order stayed to July 25, 1977”. A bench warrant was then issued and the defendant was subsequently arrested on September 13, 1977 on a nonrelated charge. He was ultimately sentenced on April 28, 1978. The present motion was made on July 21, 1978.
The surety contends that the stay of execution extended the statutory time period and maintains that the forfeiture took place, not on the date it was entered in the court records, but at the expiration of the stay. In essence, the chronological periods may be summarized as follows: (1) The surety contends that the dates run from July 25, 1977 to July 21, 1978; (2) The District Attorney maintains that the dates run from June 24, 1977 to July 21, 1978.
The People oppose remission on the grounds that it is barred by the language of CPL 540.30 (subd 2) which mandates that "The application must be made within one year after the forfeiture of the bail is declared” (emphasis supplied). They argue that the declaration of forfeiture controls the Statute of Limitations. In support of this view, the District Attorney cites an admittedly ancient case, People v Bennett (136 NY 482 [1893]). Here, a defendant failed to appear on March 21, 1892 and this fact was noted on the court’s records; on April 1, 1892, an order was entered forfeiting bail. The Court of Appeals was thus faced with the problem of determining when the forfeiture of bail occurred. Was it on the actual date of the forfeiture or when the order was entered? The court held: "Under section 593 of the Criminal Code, if the principal makes default and his nonappearance is entered in the minutes, the recognizance becomes ipso facto forfeited. Ño further or formal order is necessary to fix the liability of the surety. His obligation to pay the amount of the bail then accures and becomes absolute upon the record * * * We think the entry in the minutes in this case on March twenty-first had all the essential qualities of an order forfeiting the recognizance, if not so expressed in terms, and that upon filing a certified copy thereof judgment might have been entered” (People v Bennett, supra, pp 487-488; emphasis supplied).
What effect then was the court’s stay of execution? It simply stayed enforcement of the judgment. As the Bennett court pointed out in this regard (p 487), "It is important to observe the distinction between the time when the forfeiture is incurred and the time when the judgment may be entered. The one *129 relates to the maturity of the debt, the other to the application of the remedy for its enforcement.”
A lower court case and one directly on point is People v Continental Cas. Co. (200 Misc 546, affd 279 App Div 654). In this proceeding, the defendant failed to appear for a sentence on February 2, 1950 and the court noted in the minutes "Bail forfeited but I will stay the forfeiture for two weeks”. The court then granted additional stays up to May 17, 1950. On May 9, 1951 the defendant moved to remit the forfeiture arguing that the forfeiture was not final until May 17, 1951. The hearing court ruled that the statute started to run at the time the forfeiture was entered in the minutes and the subsequent stay did not enlarge the time within which the application for remission must be made.
A more recent case is People v Bliss (66 Misc 2d 398), in which a defendant argued that he had not received any notice of bail forfeiture. The court ruled (p 400) "Notice is not required to forfeit bail. Under section 593 of the Code of Criminal Procedure it is provided that when a defendant fails to appear in court at a time when he is required to do so, his bail becomes forfeited when the fact of his default is entered upon the minutes of the court.”
The surety concedes that the above cases furnish support for the District Attorney’s position but that the statutory authority for these cases was section 593 of the old Code of Criminal Procedure which reads: "If, without sufficient excuse, the defendant neglect to appear for arraignment, or for trial or judgment, or upon any other occasion where his presence in court may be lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes; and the undertaking of his bail, or the money deposited, instead of bail, as the case may be, is thereupon forfeited(Emphasis supplied.)
It is the surety’s present argument that while the above language may have required a rigid interpretation, our present statute does not contain the same inflexible language and thus should be interpreted in a more liberal or equitable fashion. The current statute (CPL 540.10, subd 1) reads as follows: "If, without sufficient excuse, a principal does not appear when required or does not render himself amenable to the orders and processes of the criminal court wherein bail has been posted, the court must enter such facts upon its *130 minutes and the bail bond or the cash bail, as the case may be, is thereupon forfeited. ” (Emphasis supplied.)
An analysis of both statutes shows that the court must enter the forfeiture upon its records at the time the defendant fails to appear. Such being the case, the present code is virtually identical to its predecessor and this court can only conclude that the Legislature desired no change in the time or manner of forfeiture. The brief commentary by Professor Richard Denzer supports this interpretation. It reads: "This section substantially restates CCP §§ 593, 594, 595 and 595-a.” (Practice Commentary, McKinneys Cons Laws of NY, Book 11A, CPL 540.10, p 51.)
Based on the above, this court holds that for the purposes of our present statute (CPL 540.10), forfeiture of bail is mandated by law to take effect when the defendant’s nonappearance is entered on the minutes of the court and a stay of execution does not postpone or extend the date of such forfeiture for the purposes of the Statute of Limitations.
It might further be noted that even if this court agreed with the surety’s contention regarding the time factor, it would not grant the relief sought. This is because CPL 540.30 (subd 2) demands that the surety supply adequate reasons "to provide the court, in the exercise of its discretion, [with] a basis for granting the application.” (People v Public Serv. Mut. Ins. Co., 37 NY2d 606, 612.) This requirement of good cause excusing defendant’s failure to appear is as rigid as the one-year Statute of Limitations and the court may not overlook it in a spirit of compassion or supply its lack by conjecture. Even a concession by the District Attorney cannot waive this part of the statute (Matter of White, 41 Misc 2d 994).
A review of the surety’s moving papers offers no valid excuse for the defendant’s failure to appear on the required date. Nor is the fact that he was subsequently arrested on an unrelated charge a legal substitute for his initial failure to appear. Indeed such an argument carries with it an implication that the defendant has not harmed the State by his absence. Such is not the case. Each time a defendant fails to appear, he not only displays contempt for the lawful mandate of a court, but also nullifies the effectivenes of this remedy. For what, after all, is the purpose of bail? Traditionally, it assures the appearance of a defendant in the courtroom (People ex rel. Weisenfeld v Warden, N. Y. Detention Facility at Rikers Is., 37 NY2d 760). In posting bail the defendant *131 enjoys a privilege, since there is no constitutional right to this relief (People ex rel. Shapiro v Keeper of City Prison, 290 NY 393). Bail then, within limits, lies within the discretion of the court (People ex rel. Lobell v McDonnell, 296 NY 109). Once this discretion is exercised, the defendant is granted a distinct benefit and that is the liberty of his person, "the right to freedom from unnecessary restraint before conviction” (People ex rel. Lobell v McDonnell, supra, p 111). In return for this privilege the defendant commits himself to appear for his necessary court proceedings. This duty is a heavy one and cannot be arbitrarily ignored under pain of penal sanction (Penal Law, §§ 215.56, 215.57). As our Court of Appeals has succinctly stated in connection with this duty to appear in court, (People v Continental Cas. Co., 301 NY 79, 85): "The People have a vital interest in having indictments disposed of promptly and the right to have cases tried on the date set by their elected representatives. A person charged with crime may not be permitted to absent himself deliberately at the time set for trial for any reason which seems desirable to him, * * * and assert that the People have lost no rights * * * His surety occupies no better position.”
Thus to advance the argument that the defendant was ultimately brought within the jurisdiction of the court is to totally ignore the fact that he had no choice, he had to appear before the court. His earlier absence violated the law and displayed a contempt for the administration of justice. Hence surety’s argument contains no legal merit whatsoever.
This application is consequently denied on both grounds.